UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| CHAMBERS OF<br>BETH P. GESNER<br>UNITED STATES MAGISTRATE JUDGE | 101 WEST LOMBARD STREET<br>BALTIMORE, MARYLAND 21201<br>(410) 962-4288 |

January 20, 2016

Lawrence P. Demuth, Esq.
Theodore Anthony Melanson, Esq.
Mignini, Raab, and Demuth, LLP
429 S. Main St.
Bel Air, MD 21014

David N. Mervis, Esq.
Special Assistant United States Attorney
Social Security Administration
6401 Security Boulevard, Room 617
Baltimore, MD 21235

Subject:   Tony Russell Crowl v. Carolyn Colvin, Acting Commissioner, Social Security
           Civil No.: BPG-15-446

Dear Counsel:

Pending before this court, by the Parties' consent (ECF Nos. 6, 8), are Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion") (ECF No. 15), Defendant's Motion for Summary Judgment ("Defendant's Motion") (ECF No. 16), and Plaintiff's Response to Defendant's Motion ("Plaintiff's Response") (ECF No. 17).  The undersigned must uphold the Commissioner's decision if it is supported by substantial evidence and if proper legal standards were employed.  42 U.S.C. §§ 405(g), 1383(c)(3); Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (superseded by statute on other grounds).  I have reviewed the pleadings and the record in this case and find that no hearing is necessary.  Loc. R. 105.6.  For the reasons noted below, Plaintiff's Motion (ECF No. 15) is denied and Defendant's Motion (ECF No. 16) is granted.

**I.   Background**

On March 21, 2010, plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning on November 30, 2008. (R. at 10.) His claim was denied initially on November 22, 2011, and on reconsideration on April 18, 2012. (Id.)  After a hearing held on July 22, 2013, an Administrative Law Judge ("the ALJ") issued a decision on September 26, 2013 denying benefits based on a determination that plaintiff was not disabled. (R. at 10-19.)

The ALJ found that plaintiff had the following severe impairments: osteoarthritis and allied disorders, chronic obstructive pulmonary disease ("COPD"), diabetes, and obesity.  (R. at 12-13.)  Despite these impairments, the ALJ found that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment in 20 C.F.R. § 404, Subpart P, Appendix 1.  (R. at 13.)  The ALJ concluded that plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b), except that he: could engage in unlimited pushing and pulling; could frequently balance and stoop, occasionally kneel, crouch, and crawl; can never climb ladders, ropes, or scaffolds; could frequently use the right hand for handling; had no limitation with fingering or

feeling; could not reach overhead with the right dominant extremity, but could reach in all directions with the left upper extremity. (R. at 14.)

The Appeals Council denied plaintiff's request for review on December 31, 2014, making the ALJ's opinion the final and reviewable decision of the Commissioner. (R. at 1.) Plaintiff challenges the Commissioner's decision on four grounds. First, plaintiff argues that the ALJ failed to evaluate the combination of plaintiff's musculoskeletal impairments under Listing 1.04A. Second, plaintiff asserts that the ALJ failed to follow the treating physician rule and, thus, improperly evaluated the medical opinion evidence presented. Third, plaintiff argues that the ALJ failed to properly evaluate plaintiff's credibility. Finally, plaintiff claims that the ALJ erred in his RFC determination.

## II. Discussion

First, plaintiff argues that the ALJ erred by failing to evaluate the combination of plaintiff's musculoskeletal impairments under Listing 1.04A (disorders of the spine). 20 C.F.R. Part 404, Subpart P, App. 1, § 1.04A-C. Plaintiff relies on the medical evaluations of Dr. Qarni (R. at 367-376) and the results of diagnostic x-ray imaging as evidence that the ALJ should have considered whether plaintiff's combination of impairments meets or medically equals Listing 1.04A. (ECF No. 15 at 11-14.) Defendant argues that the ALJ was not required to address Listing 1.04A because plaintiff failed to present ample medical evidence that the listing was met or equaled. (ECF No. 16-1 at 12-13.)

Under Listing 1.04, a claimant will be found disabled when he manifests a disorder of the spine and satisfies one of three subsections. 20 C.F.R. Part 404, Subpart P, App. 1, § 1.04A-C. The disorders identified in the listing include: "herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord." Id. To meet Listing 1.04, subpart A, a claimant must also demonstrate:

> "Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)."

(Id.) In order to meet a listing, the claimant must show that his impairment meets all of the criteria of the listing. See Sullivan v. Zebley, 493 U.S. 521, 530 (1990). Additionally, the impairment "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 404.1509.

Here, plaintiff failed to present evidence of nerve root compression so as to require consideration of Listing 1.04A. Though plaintiff has presented some evidence of radiculopathy (R. at 371, 401), this condition is legally insufficient to meet or equal Listing 1.04A. As this

court stated in Smick v. Comm'r, Soc. Sec.:

> "[T]he fact that [the claimant] was diagnosed with radiculopathy does not necessarily mean he suffers from "nerve root compression." Radiculopathy is defined generally as a "disorder of the spinal nerve roots." Stedman's Medical Dictionary (27th ed.2000), available at Westlaw STEDMANS 347610. [The claimant] has not cited any medical records or other evidence that equates radiculopathy with nerve root compression. Moreover, at least one court has specifically refused to recognize that radiculopathy is not [sic] synonymous with nerve root compression. See Stakely v. Astrue, No. 11–CV–01455, 2012 WL 5878341, at *4 (D.Colo. Oct. 30, 2012) (stating that "the term 'radiculopathy' is not synonymous with nerve root compression; it broadly describes a disorder or disease of a nerve root").

Smick, 2015 WL 4092449, at *2 (D. Md. July 6, 2015) (quoting Franks v. Colvin, 2014 WL 6911291, at *10 (D. Minn. Dec. 8, 2014). Thus, plaintiff failed to produce evidence of nerve root compression (or another disorder of the spine) as required by Listing 1.04A, and the ALJ was not required to address this listing in his decision. "Neither the Social Security law nor logic commands an ALJ to discuss all or any of the listed impairments without some significant indication in the record that the claimant suffers from that impairment." Ketcher v. Apfel, 68 F. Supp. 2d 629, 645 (D. Md. 1999). See also Vogel v. Comm'r, Soc. Sec., 2014 WL 722105, at *1 (D. Md. Feb. 24, 2014).

Relatedly, plaintiff argues that the ALJ erred by failing to consider plaintiff's obesity at step three of the sequential analysis, as required by Listing 1.00Q. (ECF No. 15 at 19-21.) Listing 1.00Q states that a claimant's obesity should be taken into account in determining whether the claimant meets or equals a musculoskeletal listing. 20 C.F.R. Part 404, Subpart P, App. 1, § 1.00Q.

Plaintiff's argument is unpersuasive. At step two of his analysis, the ALJ expressly identified plaintiff's obesity as a severe impairment and discussed the possible adverse effects of obesity on co-existing impairments. (R. at 12-13.) In this discussion, the ALJ recognized, for instance, that "[s]omeone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from arthritis alone." (Id. at 13.) The ALJ closed his discussion of the effects of obesity by stating that, "[t]hese considerations have been taken into account in reaching the conclusions herein." (Id.) Thus, the ALJ expressly took plaintiff's obesity into consideration, and "absent evidence to the contrary, we take [him] at [his] word." Reid v. Comm'r of Soc. Sec., 769 F. 3d 861, 865 (4th Cir. 2014.)

Second, plaintiff argues that the ALJ erred by failing to follow the treating physician rule as to the opinion of Dr. Haroon. (ECF No. 15 at 23-27.) Under the treating physician rule, the ALJ must generally give more weight to a treating physician's opinion. See 20 C.F.R. § 404.1527(c)(2). Where a treating physician's opinion is not supported by clinical evidence or is inconsistent with other substantial evidence, however, it should be afforded significantly less

weight. Craig, 76 F.3d at 590. Moreover, the ALJ is never required to give controlling weight to a treating physician's opinion on the ultimate issue of disability. 20 C.F.R. § 404.1527(d)(1). If a treating source's opinion is not given controlling weight, the ALJ must consider the following factors in deciding what weight to give the opinion: the length and frequency of treatment relationship, the nature and extent of treatment relationship, supportability, consistency, specialization, and any other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(1-6). An ALJ need not apply these factors in a mechanical fashion, so long as the ALJ articulates the reasoning behind the weight accorded to the opinion. Carter v. Astrue, 2011 WL 3273060, at *6 (D. Md. July 27, 2011). In applying these factors, "[i]t is entirely appropriate for an ALJ to consider a discrepancy between a treating physician's opinion and the provision of conservative treatment to address a condition." Norris v. Comm'r, Soc. Sec., 2014 WL 2612367, at *4 (D. Md. June 9, 2014).

In reaching his physical RFC assessment, the ALJ reviewed the treatment records and RFC Questionnaire completed by Dr. Haroon. (R. at 306-366[1]; 388-393.) In his analysis, the ALJ explained that:

> "I give little weight to Dr. Haroon's opinion dated February 13, 2012, which limits [plaintiff] to sedentary work due to pain in the knees, hips, and right shoulder (Exhibit 8F). Dr. Haroon's treating notes do not support his opinion. The majority of his examinations fail to show weakness, decreased range of motion, or evidence of atrophy."

(R. at 17.)[2]

The ALJ's identification of such inconsistencies is supported by substantial evidence. In plaintiff's RFC Questionnaire, dated February 13, 2012, Dr. Haroon opined that pain in plaintiff's knees, hips, and right shoulder limited the amount of time that plaintiff could sit, stand, and walk. (R. at 390-91.) Yet, Dr. Haroon's treatment notes do not reflect the substantial limitations that he notes in the RFC questionnaire. Plaintiff first visited Dr. Haroon in October 2009, at which time Dr. Haroon noted pain the right shoulder and tenderness in the right arm. (R. at 335.) At the same visit, Dr. Haroon administered a cortisone shot, which plaintiff is reported to have tolerated well. (Id.) At a follow-up visit in December 2009, Dr. Haroon reported no abnormal findings with respect to plaintiff's shoulder or arm. (R. at 329.) During this time, plaintiff was also treated with pain medication. (Id.) Dr. Haroon then treated plaintiff on several occasions from August 2010 to February 2012. (See R. at 307-09; 311; 378-79; 435-36.) At none of these subsequent visits did Dr. Haroon note any abnormal musculoskeletal

---

[1] Dr. Haroon's treatment records are among the medical records from Baltimore Medical System – Belair Edison Family Health Center, identified in the record as Exhibit 4F.

[2] Exhibit 8F (the RFC Questionnaire), cited in this quotation, is included in the record at pages 388-393.

condition which would explain the severe limitations identified in the RFC Questionnaire.[3]

Plaintiff argues that the absence of a detailed discussion of plaintiff's musculoskeletal impairments at these subsequent visits may be attributed to Dr. Haroon's attention to plaintiff's other symptoms and disorders (including COPD, chronic pain, and obesity) at these visits. (ECF No. 15 at 24-25.) Even if this argument were credited, it cannot be said that the ALJ erred by giving lesser weight to Dr. Haroon's opinion regarding plaintiff's disability when the treating doctor's own records were silent on plaintiff's musculoskeletal condition.

The inconsistencies between Dr. Haroon's RFC Questionnaire and his treatment notes are substantial evidence supporting the ALJ's decision to attribute "little weight" to Dr. Haroon's opinions when making the RFC determination. As the ALJ properly considered such inconsistencies in reaching this administrative decision, it cannot be said that the ALJ's decision to attribute little weight to the opinion of Dr. Haroon was erroneous. See Norris, 2014 WL 2612367, at *4.

Third, plaintiff argues that the ALJ failed to properly evaluate plaintiff's credibility. In reaching his RFC determination, the ALJ considered plaintiff's subjective statements regarding his physical limitations:

> "[Plaintiff] testified that chronic arthritic pain and knee injuries prevent him from working. He said he is able to walk a half a block before stopping to catch his breath. He said his knees, right hip, and lower hip bother him when he stands for too long. He said he is able to sit for about an hour before he has to move around. He stated he is able to carry a gallon of milk and a couple of canned goods in a bag…"

(R. at 15.) The ALJ, however, found plaintiff's statements to be "not entirely credible" for several reasons described in the opinion. (R. at 16.)

The crux of plaintiff's argument is that the ALJ drew the wrong inference from plaintiff's testimony. (ECF No. 15 at 27-31.) A review of the ALJ's discussion, however, indicates that the inference drawn—that plaintiff's limitations are less severe than alleged—is supported by substantial evidence. In evaluating plaintiff's testimony, the ALJ found plaintiff's statements regarding the "intensity, persistence and limiting effects" of the symptoms to be inconsistent with plaintiff's ability "to participate in numerous activities of daily living, including cooking, laundry, and light housework (Exhibit 4E)." (R. at 16.) The ALJ also reviewed the extensive medical evidence and found the conservative treatment of plaintiff's pain, the fact that plaintiff "does not require an assistive device to get around," and the management of plaintiff's COPD with medication to indicate that plaintiff's impairments were less severe than alleged. (Id.) These considerations constitute substantial evidence in support of the ALJ's decision. As the

---

[3] Plaintiff's medical records at the Belair Edison Family Health Center do reflect that plaintiff had previously undergone knee surgery. (R. at 357.) However, as discussed above, Dr. Haroon did not note any subsequent abnormalities in plaintiff's knees during his two and a half years of treatment of plaintiff.

role of the reviewing court, moreover, is not "to re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [ALJ]," the ALJ's decision will not be disturbed. Craig, 76 F.3d at 589.

Finally, plaintiff argues that the ALJ did not sufficiently address plaintiff's ability to perform certain work-related functions in determining plaintiff's RFC. (ECF No. 15 at 33.) Specifically, plaintiff claims that the ALJ did not sufficiently explain the weight attributed to the findings of Dr. Qarni. (Id. at 35.) Defendant argues that Dr. Qarni made no specific findings regarding plaintiff's functional ability and, as a result, the ALJ's RFC assessment was sufficient. (ECF No. 16 at 25.)[4]

SSR 96-8p requires the ALJ to consider the functions outlined in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945 when making the RFC determination. Those regulations direct the ALJ to consider, inter alia, an applicant's ability to "perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching)." 20 CFR 404.1545(b). The Fourth Circuit has rejected a per se rule requiring remand where the ALJ does not perform an explicit function-by-function analysis, but still requires the ALJ to explain how he arrived at his conclusions regarding plaintiff's ability to perform work-related functions. Mascio v. Colvin, 780 F.3d 632, 637 (4th Cir. 2015).

Here, both in his ultimate RFC determination and in his discussion of how this determination was reached, the ALJ thoroughly addressed plaintiff's ability to perform the work-related functions discussed in SSR 96-8.[5] (R. at 14-17.) Notably, the ALJ did expressly discuss the medical records of Dr. Qarni:

> "Consultative examination in September 2011 revealed joint pain without swelling or redness, no back deformity or limitation of movement, and no lower extremity motor weakness (Exhibit 5F). Sohai M. Qarni, the consultative examiner, noted 3/5 and 5/5 grip strength in the right and left hand, respectively. [Plaintiff's] gait and stance were normal."

(R. at 15.) Nowhere in Dr. Qarni's treatment notes does he discuss plaintiff's specific functional abilities. (R. at 367-372.) It is clear from the ALJ's opinion, however, that the ALJ considered

---

[4] Defendant further argues that, even if greater limitations should have been found, plaintiff would still be able to perform the occupations identified by the ALJ at step five of the analysis and, thus, that any error in the RFC assessment was harmless under Shinseki v. Sanders, 556 U.S. 396, 409 (2009). (ECF No. 16 at 26-27.) In light of the decision reached herein, I need not address defendant's additional argument.

[5] I note that the detailed additional limitations to plaintiff's ability to perform light work on their face reflect the ALJ's careful consideration of the evidence of record. (R. at 14.) The ALJ stated that plaintiff had the RFC to "perform light work…except he could engage in unlimited pushing and pulling. He could frequently balance and stoop, occasionally kneel, crouch, and crawl, and never climb ladders, ropes, or scaffolds. He could frequently use the right hand for handling. He had no limitation with fingering or feeling. He could not reach overhead with the right dominant extremity, but could reach in all directions with the left upper extremity." (Id.)

Case 1:15-cv-00446-BPG   Document 18   Filed 01/20/16   Page 7 of 7

Crowl v. Colvin
BPG-15-446
January 20, 2016
Page 7

Dr. Qarni's medical—if not functional—evaluation to be consistent with the ALJ's overall assessment that plaintiff's functional limitations were less severe than alleged. (R. at 15.) Thus, it cannot be said that the ALJ left this court "to guess about how the ALJ arrived at his conclusions on [Plaintiff's] ability to perform relevant functions…" Mascio v. Colvin, 780 F.3d 632, 637 (4th Cir. 2015).

### III.     Conclusion

For the reasons stated above, Plaintiff's Motion (ECF No. 15) is DENIED and Defendant's Motion (ECF No. 16) is GRANTED.

Despite the informal nature of this letter, it will constitute an Order of the court and will be docketed accordingly.

Very truly yours,

/s/

Beth P. Gesner
United States Magistrate Judge